IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------------- :
KETTLINE ESPERANCE, : CASE NO. 1: 07 CV 01784
 :
 Plaintiff, :
 : <u>MEMORANDUM OF OPINION AND</u>
 -vs- : <u>ORDER GRANTING SUMMARY</u>
 : <u>JUDGMENT TO THE DEFENDANT</u>
 :
BRACOR, INC. :
d/b/a WILLCARE :
 Defendant. :
---------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Defendants, Bracor, Inc. and BHC Services, Inc., doing business as Willcare ("Willcare"), removed this case, case number 1:07-CV-1784, to this Court on 15 June 2007.[1]

In the second amended complaint Kettline Esperance ("Ms Esperance") alleged two counts against Bracor, Inc. Her first count alleges discrimination on the basis of age in violation of Section 4112 of the Ohio Revised Code. Plaintiff's second count alleges discrimination on the basis of race or national origin in violation of Section 4112 of the Ohio Revised Code. (Doc. 12.)

---

[1] Plaintiff originally filed this action against BHC Services and Bracor, Inc. On 26 October 2007, plaintiff filed her second amended complaint against Bracor, Inc., dba Willcare.

**I.     JURISDICTION.**

Ms Esperance initiated this suit in the Court of Common Pleas in Cuyahoga County.  Defendants were served with a summons and an amended complaint on 22 May 2008.  Pursuant to 28 U.S.C.S. § 1446(b) the defendants filed a notice of removal within thirty days after the receipt by the defendant of an amended pleading.

Defendants removed this case to federal court on the basis of diversity jurisdiction.  Defendant Bracor, Inc. is a New York corporation with its principal place of business in Buffalo, New York.  Defendant BHC Services, Inc., doing business as Willcare, is a New York corporation with its principal place fo business in Buffalo, New York.  (Doc. 1.)  Plaintiff is a citizen of the United States and resides in Lake County Ohio.  (Doc. 1.)

When plaintiff filed her claim in common pleas court, she alleged damages in excess of $25,000 in "compensatory damages, back wages, interest, fringe benefits, witness fees and fees for experts, consequential damages, incidental damages, punitive damages, all costs and reasonable attorneys' fees."  (Doc. 1.)  In defendants' notice of removal, the defendants assert that plaintiff is seeking "monetary relief far in excess of $75,000."  (Doc. 1.)  At the time of plaintiff's termination, her salary was $46,000 per year.  In addition to compensatory damages, plaintiff seeks "fringe benefits,. . . consequential damages, incidental damages, and punitive damages."  (Doc. 1.)  Plaintiff seeks damages in excess of $75,000.

This case is between citizens of different states and the amount in controversy exceeds $75,000.  The diversity requirements of 28 U.S.C. § 1332 are met in this case.

2

## II.     MOTION FOR SUMMARY JUDGMENT

On 18 April 2008, Willcare filed a motion for summary judgment on the two counts alleged in the second-amended complaint.  (Doc. 19.)  In its motion for summary judgment, Willcare asserts Ms Esperance cannot satisfy her prima facie case of age, race, or national origin discrimination directly or indirectly.  Willcare contends there is no direct evidence that Willcare discriminated against Ms Esperance.  Willcare argues Ms Esperance cannot satisfy her prima facie case indirectly because she is not qualified for her position and Willcare did not replace Ms Esperance with someone outside her protected class or treat her less favorably than a similarly situated non-protected employee.  In addition, Willcare contends that if this case is evaluated as a reduction-in-force case because Willcare did not replace the plaintiff, Willcare did not single Ms Esperance out for termination for impermissible reasons.  Willcare argues its reasons for terminating the plaintiff are legitimate and nondiscriminatory, and plaintiff cannot show that any of the articulated reasons are a pretext for discriminatory animus. (Doc. 19.)

Ms Esperance filed a response to defendant's motion for summary judgment on 19 May 2008.  (Doc. 22.)  In her response, Ms Esperance argues her termination resulted from a reduction-in-force.  Ms Esperance asserts she can prove her prima facie case of discrimination both directly and indirectly.  She argues that the sworn statements of two Willcare employees, Ms Witten and Ms Beauregard, satisfy her prima facie case directly.  In addition, plaintiff asserts she can prove her prima facie case indirectly because she was qualified for her position and younger Caucasian employees were treated more favorably.  In addition, plaintiff argues her discharge was a reduction-in-force termination and she can prove Willcare singled her out for discharge for impermissible reasons.

3

(Doc. 22.) Ms Esperance also argues that Willcare's stated reasons for her termination are false and pretext for unlawful discrimination. Id.

On 2 June 2008, Willcare filed a reply to plaintiff's response. (Doc. 24.) In its reply, Willcare reasserts that Ms Esperance cannot satisfy her prima facie case. Willcare also argues that Ms Esperance cannot show that any of Willcare's nondiscriminatory reasons for plaintiff's discharge are a pretext for discrimination.

For reasons discussed below this Court will grant summary judgment for Willcare on both counts.

### III.     BACKGROUND.

Willcare is a New York corporation with its principal place of business in Buffalo, New York. (Doc. 1.) Willcare provides home healthcare services. (Doc. 19 Ex. A.) The company has five main locations: Buffalo, New York; Middletown, New York; Newburgh, New York; Kingston, New York; and Cleveland, Ohio. (Doc. 19, Ex. B.)

Ms Esperance was born on 5 June 1961 in Haiti. She is a forty-seven year-old black woman. (Doc. 22.) Ms Esperance began working for Willcare as a support team supervisor in June of 2004. (Doc. 19, Ex. A.) Plaintiff's duties included overseeing the data entry and medical records departments in Cleveland. She also assigned work to employees, provided performance reviews, and ensured paperwork was completed promptly and accurately. (Doc. 19, Ex. A.)

On 24 August 2006, Ms Esperance received a performance evaluation that revealed she consistently met and sometimes exceeded the expectations of her employer. (Doc. 22, Ex. 13.) Plaintiff's evaluation was mostly positive with a few

4

exceptions. She received lower marks in the following categories: 1) "Demonstrates a high level of tolerance and even temperament when dealing with people, uses tact and sensitivity;" 2) "Demonstrates skill in conflict resolution;" and 3) "Implements on-going control and review of all Agency forms." Id. Plaintiff was instructed that she should "[d]evelop management and people skills to enhance her current ability, and reread "The One Minute Manager" to help add new dimensions to her "people skills." Overall the plaintiff was considered "a hard worker and dedicated to the welfare of the agency," and she was advised that "with a small effort, she could become a great manager and supervisor." Id.

During the course of plaintiff's employment at Willcare, employees filed several complaints against her regarding her management style and her treatment of co-workers. Estelle Brickner, the Director of Health Care Operations in Willcare's corporate office, received complaints about the plaintiff from Shantilla Adams, Sandi Murphy, and Judy Petretic. (Doc. 18, Ex. C.) Shantilla Adams and Sandi Murphy also complained about the plaintiff to plaintiff's supervisor, Jennifer Witten. (Doc. 19. Ex. D.) The Office Manager of Willcare's Cleveland location, Aimee Lorkovic, also received complaints about the plaintiff. (Doc. 19, Ex. E.) In addition, Charles Pilney, plaintiff's supervisor at the time of her termination, received complaints about the plaintiff from Sandi Murphy, Shantilla Adams, and Lashauna Clack. (Doc. 19, Ex. F.)

One aspect of plaintiff's job was to ensure prompt and accurate completion of the documentation in her department. (Doc. 19, Ex. G.) Proper completion of this documentation is considered important because the documents allow Willcare to receive payment for services rendered. (Doc. 19, Ex. G.) Ms Estelle Brickner ("Ms Brickner"),

5

the Director of Health Care Operations for Willcare, stated under oath that "[i]n October 2006, 22% of the recertifications at Willcare's Cleveland location were not completed within the required 5 day time frame." (Doc. 19, Ex. G.) During a deposition Ms. Brickner stated that Willcare faced a "serious backlog of documentation that had not been submitted or processed, which was causing [Willcare] to be out of compliance with [its] potential Medicare certification and causing delays in billing and a potential bad debt." (Doc. 19, Ex. C.)

Plaintiff supervised thirteen support team employees at Willcare. (Doc. 19, Ex. A.) During plaintiff's employment at Willcare, the support team experienced nearly 50% employee turnover. Id. Approximately half of the Willcare employees under plaintiff's supervision resigned or were terminated. Id.

Willcare terminated the plaintiff's employment on 20 October 2006. According to Estelle Bricker plaintiff was terminated due to:

> The continuing lack of work being done according to deadlines, and continued concerns about compliance, adhering to regulations, meeting billing deadlines, extreme turnover in her department, and several complaints about her management style and communication style.

(Doc. 19, Ex. C.)

After Ms Esperance's termination, Willcare did not hire a new support team manager to replace her. (Doc. 19.) Aimee Lorkorvic stated in her deposition that she had a conversation with Ms Brickner, in which Ms Brickner explained "at some point [Ms Esperance's] position was going to be eliminated based on. . . how the other offices were set up, that no two offices had two office managers or support team supervisors. It all fell into one position." (Doc. 19 Ex I.) Willcare claims it decided to eliminate the position and

6

redistributed the responsibilities to other existing employers, after it discharged Ms Esperance.  (Doc. 19.)  Most of Ms Esperance's former responsibilities were absorbed by Aimee Lorkovic, the Office manager who is 35 years-old, and Chuck Pilny, the Director of Patient Services who is 63 years-old.  (Id.)

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read

7

together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 56.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  The nonmovant must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. (quoting in part Anderson, 477 U.S. at 257); see Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).  The nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment."  Moore v. Philip Morris Co., 8 F.3d 335, 339-40 (6th Cir. 1993).

Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.  See Anderson, 477 U.S. at 248.  If the nonmovant fails to present such affirmative evidence, then there is no need for a trial since there are no "genuine factual issues that properly can be resolved only by a finder of fact." Anderson, 477 U.S. at 247-48; see Celotex, 477 U.S. at 322-23.

8

Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted)

### V.    LAW AND ANALYSIS

Pursuant to Fed. R. Civ. Pro. 56 the defendant moves this Court for summary judgment on both counts alleged in the complaint: 1) discrimination on the basis of age; and 2) discrimination on the basis of race or national origin.  (Doc. 19.)  Willcare contends Ms. Esperance cannot satisfy her prima facie case of age, race, or national origin discrimination through direct or indirect evidence.  Willcare argues Ms. Esperance cannot prove: 1) she was qualified for her position; 2) she was replaced by a person outside the protected class or a similarly situated non-protected person was treated more favorably than she was; or 3) that Willcare singled Ms. Esperance out for impermissible reasons in a reduction-in-force termination.  (Doc. 19.)  Willcare also argues that its reasons for terminating plaintiff are legitimate and nondiscriminatory.

Plaintiff responded in opposition to defendant's motion for summary judgment. She argues that she can satisfy her prima facie case for employment discrimination, and

9

the defendant's stated reasons for terminating plaintiff are pretext for discrimination. (Doc. 22.)

Willcare filed a reply to plaintiff's opposition, in which it argues Ms Esperance cannot satisfy her prima facie case because she was not qualified for her position, Willcare did not replace her with someone outside her protected class nor did Willcare treat her less favorably than a similarly situated non-protected employee. In addition, Willcare did not single out Ms Esperance for termination for impermissible reasons and Willcare's nondiscriminatory reasons for terminating plaintiff are legitimate. Willcare argues plaintiff has not provided clear and convincing evidence of actual malice to withstand summary judgment on her punitive damages claim. (Doc. 24.)

### A. Ohio Revised Code Section 1442.02(A).

Ohio Revised Code Section 1442.02(A) prohibits employers from discharging an employee because the employee falls into a protected class. Section 4112.02(A) of the Ohio Revised Code provides:

> It shall be unlawful discriminatory practice:
>
> (A) For any employer, because of race. . .national origin. . .[or] age . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Id.

Under a claim for discrimination, the plaintiff bears the initial burden of establishing a case of discriminatory intent. A plaintiff may establish a prima facie case of

discriminatory intent, either directly or indirectly. Mauzy et al. v. Kelly Services, Inc. et al., 75 Ohio St. 3d 578 (1996) at 596-587.

> **1. Plaintiff has not proven her prima facie case of age, race, or national origin discrimination through direct evidence.**

The Ohio Supreme Court has identified methods for establishing a prima facie case of discrimination under Ohio Revised Code Sections 4112.14 and 4112.02. Mauzy, 74 Ohio St. 3d 586-587, Brynes et al. v. LCI Communication Holdings Company et al., 77 Ohio St. 3d 125 (1996). A plaintiff may make a prima facie showing of discriminatory intent by either satisfying a four-part test or by direct evidence. Under Ohio law, a "plaintiff may establish a prima facie case directly by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory animus." Mauzy, 75 Ohio St. 3d 586-587.

In Brynes et al. v. LCI Communications Holdings Company et al., 77 Ohio St. 3d 125 (1996), the Ohio Supreme Court stated "[a]bsent some causal connection or link between an employer's discriminatory statements or conduct and a plaintiff employee, there is no permissible inference that the employer is motivated by discriminatory animus to act against the plaintiff-employee." Id. at 130. The plaintiffs in Brynes tried to establish their prima facie case of discrimination with direct evidence. The plaintiffs offered evidence of their employer's discriminatory remarks and conduct; however, only one remark was in reference to one of the plaintiffs. The Ohio Supreme Court determined there was no causal link between the remarks and the plaintiffs' discharges.

11

Ms Esperance offers the testimony of Ms Jennifer Witten and Ms Elinor Beauregard to prove her prima facie case of discrimination directly.  (Doc. 22.)  Ms Witten testified that she believed Ms Esperance was targeted for termination.  The majority of Ms Witten's testimony described her own mistreatment at Willcare, but lacks any specific testimony regarding discriminatory treatment of the plaintiff.  Ms Beauregard testified that she felt she and Ms Witten were mistreated by Willcare.  What is noticeably missing from plaintiff's brief in opposition to summary judgment is any causal link between the statements and conduct of Willcare and the plaintiff in this case.  The statements of Ms Witten and Ms Beauregard do not raise an inference that Willcare was motivated by discriminatory animus to act against the plaintiff.  See Brynes, 77 Ohio St. 3d 125, 129 (1996).

In Abrams v. Am. Computer Tech., 168 Ohio App. 3d 362 (1st App. Dist. 2006), an Ohio court stated "[a]ge related comments that are isolated, vague, or ambiguous, or that refer to other employees, cannot support a finding of discrimination under Ohio Rev. Code Ann. 4112.02." Id. at 369.  Thus, the comments of Willcare employees regarding Ms Witten cannot support a finding that Willcare discriminated against Ms Esperance.  Plaintiff has not proven her prima facie case by direct evidence.

12

**2.    Prima facie case of discrimination through indirect evidence.**

**a.    Prima facie case of discrimination.**

In Baker v. Scovill, Inc., 6 Ohio St. 3d 146 (1983), the Ohio Supreme Court adopted the US Supreme Court's standards for establishing a prima facie case of discrimination indirectly, as enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  A plaintiff must show the following elements to establish a prima facie case of discrimination: "(1) that [s]he was a member of the statutorily-protected class, (2) that [s]he was discharged, (3) that [s]he was qualified for the position, and (4) that [s]he was replaced by, or that [her] discharge permitted the retention of a person outside of the statutorily protected class." Brynes, 77 Ohio St. 3d 128.

**b.    Prima facie case of discrimination in a reduction-in-force case.**

Ms Esperance argues she does not have to prove the fourth element of the prima facie case because her termination was a result of a reduction-in-force.  The elements of a prima facie case are modified in a reduction-in-force termination.  "In such a case, the plaintiff is not required to plead the fourth prong of the prima facie framework because in a reduction-of-force situation the plaintiff is not in fact replaced."  Farrell v. Tipp Mach. & Tool, Inc., 2005 U.S. Dist. Lexis 44897, 9 (2005) citing Scott v. Goodyear Tire & Rubber Co., 160 F.3d 1121, 1126 (6th Cir 1998).  Instead, the plaintiff must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons."  Farrell, 2005 U.S. Dist. LEXIS

13

44897, 9-10 (2005) citing Barnes v. GenCorp Inc., 896 F. 2d 1457, 1465 (6th Cir. 1999)(brackets in original).

> An employee claiming age discrimination must satisfy the heightened burden applicable to reduction in force cases to establish a prima facie case of age discrimination. Thus, [s]he must not only demonstrate that [s]he is a member of a protected class, was subjected to an adverse employment action, and was qualified for the particular position, but must also present additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [her] out for discharge for impermissible reasons.

Gronek v. Wesco Distribution, Inc., 2005 U.S. App. LEXIS 2100, 3 (6th Cir. 2005). The Sixth Circuit in Conley v. U.S. Bank National Association, 211 Fed. Appx. 402, 405 (6th Cir. 2006) stated "[t]he guiding principle [in a reduction-in-force case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff."

Ms Esperance argues her termination was the result of a reduction-in-force. Willcare asserts that plaintiff was terminated as a result of her "inability to communicate effectively with her team and her inability to ensure that documentation and reports were completed promptly and accurately" and Ms Esperance's position was "subsequently eliminated."

In the law and argument section of plaintiff's brief in opposition to defendant's motion for summary judgment, plaintiff asserts that she "has provided an overwhelming amount of indirect evidence pointing to the fact that [d]efendant singled her out for impermissible reasons." Plaintiff, however, fails to incorporate any specific evidence of the defendant singling out the plaintiff for impermissible reasons in her argument. Regardless of whether plaintiff can make out a prima facie case under the standard four-

14

part test or the modified reduction-in-force test, plaintiff has not shown that any of Willcare's stated reasons for terminating plaintiff are a pretext for unlawful discrimination.

> **3. Even if Ms Esperance satisfies her prima facie case, plaintiff has not shown that Willcare's reasons for plaintiff's discharge are pretextual.**

Once the plaintiff satisfies her prima facie case of discrimination "the burden of production shifts to the employer to articulate some legitimate nondiscriminatory reason for its actions." Skelton v. Sara Lee Corp., 249 Fed. Appx. 450, 459 (6th Cir. 2007). Once an employer articulates a "legitimate, nondiscriminatory reason for its actions, the burden shifts back to the employee to rebut the employer's proffered reason by showing by a preponderance of the evidence that the employer's articulated reason was a pretext 'designed to mask. . . discrimination.'" Skelton, 249 Fed. Appx. 460 (6th Cir. 2007). The plaintiff in a discrimination in employment case can prove pretext by demonstrating that the defendant's stated reason "1) has no basis in fact; 2) did not actually motivate the employer's challenged conduct; or 3) was insufficient to motivate the employer's challenged conduct." Id. citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003).

Even if plaintiff could satisfy her prima facie case, she has not shown the defendant's offered reasons for her termination are pretext to disguise unlawful discrimination. The defendant asserts it terminated plaintiff's employment as a result of "[p]laintiff's inability to communicate effectively with her team, the turnover in plaintiff's department and plaintiff's inability to ensure that documentation and reports were completed promptly and accurately." (Doc. 19.)

In plaintiff's brief in opposition to defendant's motion for summary judgment, plaintiff asserts twenty-two reasons why she believes the defendant's offered reasons for her termination are false. Only one of plaintiff's asserted reasons even touches on the defendant's offered reasons for plaintiff's termination. It is: "[t]here is not a single document reflecting that the support team department had a high turnover rate because of [p]laintiff." (Doc. 22.) Defendant asserts the high turnover in plaintiff's department as one of three reasons for plaintiff's termination. Evidence in the record shows that nearly half of the employees under the plaintiff's supervision left Willcare. Defendant's assertion of high turnover in plaintiff's department has basis in fact.

In addition, plaintiff ignores Willcare's determination that plaintiff was unable to communicate effectively with her team and plaintiff's inability to ensure documentation and reports were completed promptly and accurately. (Doc. 22.) Defendant's offered reasons for plaintiff's termination are legitimate and nondiscriminatory reasons for an employer to terminate an employee. Plaintiff has failed to demonstrate that any of the defendant's offered reasons "1) has no basis in fact; 2) did not actually motivate the employer's challenged conduct; or 3) was insufficient to motivate the employer's challenged conduct." Skelton, 249 Fed. Appx. 460 (6th Cir. 2007) citing Wexler, 317 F.3d 574 (6th Cir. 2003).

Ms Esperance cites to W.F. Bolin Co. V. NLRB, 70 F.3d 863 (6th Cir. 1995), in her brief in opposition to defendant's motion for summary judgment. Plaintiff cites this National Labor Relations Act case, for the proposition that "discriminatory motive may reasonably be inferred from a company's deviation from past practices in implementing the discharge." (Doc. 22.) Plaintiff, however, does not explain how Willcare deviated

16

from its past practices.  In the fact section of plaintiff's brief in opposition to defendant's motion for summary judgment, she states that she was never counseled, disciplined, or written up for any of the complaints filed against her.  Plaintiff does not provide any evidence that Willcare counseled, disciplined, or wrote up employees when complaints were filed against them in the past.  Plaintiff has not shown that Willcare deviated from past practice when it terminated Ms Esperance.

The issue in this case is whether "'the employer treated some people less favorably than others because of their race,'" national origin, or age "not whether the employer treated an employee less favorably than 'someone's general standard of equitable treatment.'" Adams v. Tenn. Dep't of Finn. & Admin., 179 Fed. Appx. 266, 272 (6th Cir. 2006) citing Batts v. NTL Corp., 844 F.2d 331, 337 (6th Cir. 1988).  Plaintiff must present "sufficient evidence of racial animus" for the Court to label Willcare's "acts as discriminatory. . ." Adams, 179 Fed. Appx. 272 (6th Cir. 2006).

Plaintiff has failed to show that any of the defendant's proffered reasons for plaintiff's termination were a pretext for discriminatory animus on the basis of age, race, or national origin.  Even assuming plaintiff could satisfy her prima facie case of discrimination, plaintiff has not shown Willcare's reasons for plaintiff's termination were pretextual.

17

**VI. CONCLUSION**

For the foregoing reasons summary judgment is granted for the defendant Willcare on both counts and this matter is dismissed in its entirety.

IT IS SO ORDERED.

                                                      /s/Lesley Wells
                                           UNITED STATES DISTRICT JUDGE

Date: 6 January 2009